Lee Bordeleau et al., Appellants, v State of New York et al., Respondents. [905 NYS2d 307]—

Rose, J. Appeal from an order of the Supreme Court (Lynch, J.), entered March 5, 2009 in Albany County, which granted defendants' motions to dismiss the complaint.

In this declaratory judgment action, plaintiff taxpayers challenge the constitutionality of the appropriation of state funds to the Department of Agriculture and Markets (hereinafter Department) and two public benefit corporations (hereinafter PBCs) for ultimate distribution to private entities for the avowed purpose of fostering economic development. The complaint alleges that this funding violates NY Constitution, article VII, § 8 (1), which prohibits the giving or loaning of state money to any private entity, and NY Constitution, article VII, § 7, which requires that every new appropriation distinctly specify the object or purpose of the funds appropriated. Defendants made pre-answer motions to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7).* Supreme Court granted defendants' motions and dismissed the complaint. Plaintiffs now appeal.

"When assessing the adequacy of a complaint in light of a CPLR 3211 (a) (7) motion to dismiss, the court must afford the pleadings a liberal construction, accept the allegations of the complaint as true and provide plaintiff . . . 'the benefit of every possible favorable inference' " (*AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582, 591 [2005] [citations omitted]; *see EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]; *Crepin v Fogarty*, 59 AD3d 837, 838 [2009]). On such a motion, the court's proper function is to determine whether the facts alleged fit within any cognizable legal theory (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). Alternatively,

---

* Although some defendants also based their motions upon CPLR 3211 (a) (3) and (10), they abandoned any claim for dismissal based upon an alternate ground by failing to address it in their briefs on appeal (*see Jock v Landmark Healthcare Facilities, LLC*, 62 AD3d 1070, 1074 n 2 [2009]).

to obtain dismissal pursuant to CPLR 3211 (a) (1), defendants were required to " 'show that the documentary evidence upon which the motion is predicated resolves all factual issues as a matter of law and definitively disposes of the plaintiff's claim' " (*Adamkiewicz v Lansing*, 288 AD2d 531, 532 [2001], quoting *Unadilla Silo Co. v Ernst & Young*, 234 AD2d 754, 754 [1996]; *see Angelino v Michael Freedus, D.D.S., P.C.*, 69 AD3d 1203, 1205 [2010]).

Here, the complaint can be read to allege that certain appropriations in the 2008-2009 budget indirectly gave state funds to private entities in violation of NY Constitution, article VII, § 8 (1) by passing the funds through the Department and the PBCs before disbursement. While defendant State of New York can validly appropriate funds to public entities such as its departments and PBCs (*see Schulz v State of New York*, 84 NY2d 231, 246 [1994], *cert denied* 513 US 1127 [1995]; *Matter of Palmateer v Greene County Indus. Dev. Agency*, 38 AD3d 1087, 1089 [2007]), the NY Constitution prohibits gifts or loans of state funds to private entities. Article VII, § 8 (1) provides that "[t]he money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking." This provision was added in 1846 "in reaction to the [Legislature's] prior practices of subsidizing private railroad and canal companies through long-term State debt obligations, which the State ultimately was forced to pay when many of those private enterprises failed during the depression of 1837-1842. Thus, subsidization by gifts of public funds to private undertakings, or by pledging public credit on their behalf, was banned, irrespective of how beneficent or desirable to the public the subsidized activity might seem to be" (*Matter of Schulz v State of New York*, 86 NY2d 225, 233-234 [1995] [citations omitted], *cert denied* 516 US 944 [1995]; *see People v Ohrenstein*, 77 NY2d 38, 50-51 [1990]; *Wein v State of New York*, 39 NY2d 136, 142-143 [1976]).

Defendants do not dispute plaintiffs' allegation that the challenged funds were ultimately distributed by the Department and the PBCs to private entities. Instead, they contend that, as a matter of law, the appropriations did not violate the NY Constitution because the grant of state funds to the Department and to the PBCs was permissible, those entities then disbursed the funds for proper public purposes with only incidental private benefits and, in any event, the private recipients agreed to perform services or provide other consideration in exchange for the funds. In response, plaintiffs argue that the complaint states a viable cause of action under the NY Constitution because the challenged appropriations subsidize private entities.

First, we cannot accept defendants' premise that passing state funds through the hands of the Department or a PBC before distribution to private entities will avoid the constitutional proscription. Giving the funds to private entities by channeling them through authorized public entities will not shield these appropriations from challenge, for the State may not do " 'indirectly that which cannot be done directly' " (*Wein v State of New York*, 39 NY2d at 145, quoting *People ex rel. Burby v Howland*, 155 NY 270, 280 [1898]; *accord Schulz v State of New York*, 84 NY2d at 241). An analogous circumvention was rejected by the Court of Appeals when it stated: "If the gift of the bonds of the state to a railroad corporation would be such a gift—and it undoubtedly would be—then so would be an issue of bonds by the state with the express condition that their proceeds should be given to the same corporation. The evasion of the constitutional prohibition would be palpable and it could not and should not be permitted" (*People v Westchester County Natl. Bank of Peekskill, N.Y.*, 231 NY 465, 476 [1921]).

Nor can we accept defendants' argument that proof of a public purpose for the funds that were disbursed by the intermediaries here establishes the legitimacy of the appropriations. The Court of Appeals has made clear that the existence of a public purpose for an appropriation that aids a private undertaking is not the test of whether it is lawful. "However important, however useful the objects designed by the legislature, they may not be accomplished by a gift or a loan of credit to an individual or to a corporation. It will not do to say that the character of the act is to be judged by its main object—that because the purpose is public, the means adopted cannot be called a gift or a loan. To do so would be to make meaningless the provision adopted by the [constitutional] convention of 1846. Gifts of credit to railroads served an important public purpose. That purpose was distinctly before the legislatures that made them. Yet they were still gifts and so were prohibited" (*id.* at 475).

Defendants next contend that the state funds here were not gifts because they were disbursed by the Department and the PBCs in exchange for services or other valuable consideration. In support of this contention, the State produced an attorney's affirmation on behalf of the Department asserting that its funds were expended for activities designed to increase the production, marketing and consumption of certain agricultural products grown and distributed by private interests. The record also contains an affidavit of a senior vice-president of defendant Empire State Development Corporation which alleges that public benefits were derived from its expenditures to private busi-

ness enterprises, such as reduction of their costs, promotion of their growth and retention of their jobs in New York. These submissions regarding consideration are unavailing, however, because they "do not constitute documentary evidence upon which a proponent of dismissal can rely" (*Crepin v Fogarty*, 59 AD3d 837, 838 [2009], *supra*; *see Realty Invs. of USA v Bhaidaswala*, 254 AD2d 603, 605 [1998]).

In any event, defendants' submissions do not establish, as a matter of law, that the appropriations challenged here pass constitutional muster. Defendants' argument that the public benefits received constitute adequate consideration for disbursing public funds to private entities is premised on our observation in *Matter of La Barbera v Town of Woodstock* (29 AD3d 1054 [2006], *lv dismissed* 7 NY3d 844 [2006]) that the consideration for the transfer of public property to a private entity "may take the form of public benefits or services rendered pursuant to a contract" (*id.* at 1056). In that case, however, we found that a town's grant of a conservation easement to a not-for-profit conservation organization in exchange for the preservation of the land as an undeveloped public park provided a clear public benefit in perpetuity and, as a matter of law, constituted adequate consideration (*id.* at 1056). We did not consider whether NY Constitution, article VII, § 8 would permit state funds to be given to private entities in exchange for the sort of benefits alleged here.

Nor do the other cases cited by defendants support their argument that, as a matter of law, there was adequate consideration here. We have held that a public entity's expenditure of public funds for promotional activities, such as advertising and marketing, will meet the constitutional requirement that a corresponding benefit be received where, unlike here, the activities promote the public entity itself (*see Matter of Schulz v Warren County Bd. of Supervisors*, 179 AD2d 118, 122 [1992], *lv denied* 80 NY2d 754 [1992]). And, while we have also found that payments made by the Commissioner of Agriculture and Markets for publicity designed to create new markets for apples did not violate NY Constitution, article VII, § 8 (1) in *Wickham v Trapani* (26 AD2d 216 [1966]), there the moneys disbursed were the proceeds of assessments against the parties to be benefitted and not public funds (*id.* at 219-220). In the other cases cited by defendants, the public funds were given to PBCs that disbursed them to build facilities and for other proper public purposes that only incidentally benefitted private entities (*see Comereski v City of Elmira*, 308 NY 248 [1955]; *Matter of Palmateer v Greene County Indus. Dev. Agency*, 38 AD3d 1087 [2007], *supra*;

*Tribeca Community Assn. v New York State Urban Dev. Corp.*, 200 AD2d 536 [1994], *lv denied* 84 NY2d 805 [1994]). In the very different circumstances present here, defendants' submissions do not establish that the public benefits of the appropriations were so dominant and their private benefits so incidental as to constitute adequate consideration as a matter of law.

Accordingly, inasmuch as plaintiffs allege that the Department and the PBCs passed the appropriated funds on to private entities, and that allegation must be accepted as true, we find that the complaint indeed states a cause of action for violation of NY Constitution, article VII, § 8. Thus, it should not have been dismissed under CPLR 3211 (a) (7). Similarly, since the propriety of the appropriations challenged here depends upon whether their public benefits constitute sufficient consideration while the private benefits are merely incidental, defendants' submission of documentary evidence showing their public purposes fails to resolve any material issue in their favor as a matter of law and dismissal is not warranted under CPLR 3211 (a) (1) (*see Weston v Cornell Univ.*, 56 AD3d 1074, 1076 [2008]; *Heslin v Metropolitan Life Ins. Co.*, 9 AD3d 581, 583 [2004]).

We turn next to plaintiffs' additional cause of action alleging violations of NY Constitution, article VII, § 7. Article VII, § 7 prescribes that "[n]o money shall ever be paid . . . except in pursuance of an appropriation by law . . . [which] shall *distinctly specify* the sum appropriated, and *the object or purpose* to which it is to be applied" (emphases added). Plaintiffs allege in their complaint that numerous appropriations in the 2008-2009 budget merely provide that the money appropriated will be spent according to some future agreement between the Governor, Speaker of the Assembly and Majority Leader of the Senate. They contend that these appropriations are not only insufficiently specific as to their object or purpose, but that they also improperly delegate legislative control over expenditures, promote secrecy and reduce public accountability for cash grants to favored private interests. Many of these challenged appropriations refer to memoranda of understanding to be executed in the future. Others refer to a past memorandum that granted sole and largely unfettered discretion to the Governor, the Majority Leader of the Senate and the Speaker of the Assembly to designate, in the future, the ultimate recipients of funds for the undefined purpose of "economic development." In addition, neither the appropriations nor the referenced memoranda of understanding state the recipients, projects or specific purposes of the funding. Nonetheless, we are constrained by the decision of the Court of Appeals in *Saxton v Carey* (44 NY2d 545 [1978])

to conclude that plaintiffs' allegations that the appropriations lack specificity fail to state a justiciable controversy. In *Saxton*, the Court of Appeals held: "[T]he degree of itemization necessary in a particular budget is whatever degree of itemization is necessary for the Legislature to effectively review that budget. This is a decision which is best left to the Legislature, for it is not something which can be accurately delineated by a court. It is, rather, a function of the political process, . . . [and] the remedy lies not in the courtroom, but in the voting booth" (*Saxton v Carey*, 44 NY2d at 550-551; *see Pataki v New York State Assembly*, 4 NY3d 75, 97 [2004]). Accordingly, we cannot say that Supreme Court erred in dismissing plaintiffs' cause of action for violations of NY Constitution, article VII, § 7.

Finally, we find no merit in the argument by defendants International Business Machines Corporation and West Genesee Hotel Associates that this action was properly dismissed as against them because plaintiffs lack standing to sue them. Since the complaint alleges that state funds were unlawfully disbursed to those defendants and they do not deny that they have received at least some of the funds, plaintiffs have standing to join them as recipients of the funds pursuant to State Finance Law § 123-b (2) (*see Huron Group, Inc. v Pataki*, 5 Misc 3d 648, 686-687 [2004], *affd* 23 AD3d 1051 [2005], *appeal dismissed* 6 NY3d 803 [2006]; *cf. Matter of Quigley v Town of Ulster*, 66 AD3d 1295, 1297 [2009]).

Mercure, J.P., Peters, Spain and Kavanagh, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motions to dismiss the first cause of action; motions denied to that extent and matter remitted to the Supreme Court to permit defendants to serve answers within 30 days of the date of this Court's decision; and, as so modified, affirmed. **[Prior Case History: 22 Misc 3d 1131(A), 2009 NY Slip Op 50380(U).]**